NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
PEDRO YANG, CAROL JACKSON, and      :
PETER S. KELSCH, on behalf of       :
themselves and all persons similarly:
situated,                           :   Civil Action No. 02-5968 (JAP)
          Plaintiffs,               :   (consolidated with No. 03-725 (JAP))
     -v-                            :
                                    :   **OPINION**
STEVEN A. ODOM, MARK GERGEL,        :
HENSLEY E. WEST, MARTIN D.          :
KIDDER and STEPHEN J. CLEARMAN,     :
                                    :
          Defendants.               :
_____ :

APPEARANCES:

Allyn Z. Lite, Esq.
Joseph J. DePalma, Esq.
Katrina Blumenkrants, Esq.
LITE DEPALMA GREENBERG & RIVAS, LLC
Two Gateway Center
12th Floor
Newark, New Jersey 07102-5003

   *Plaintiffs' Liaison Counsel*

Robert M. Kornreich, Esq.
Carl L. Stine, Esq.
Daniel M. Rosenberg, Esq.
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022

   *Plaintiffs' Lead Counsel*

William B. McGuire, Esq.
TOMPKINS, MCGUIRE, WACHENFELD & BARRY
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4070

J. David Dantzler, Jr., Esq.
J. Timothy Mast, Esq.
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street
Suite 5300
Atlanta, Georgia 30308

    *Attorneys for Defendants*

PISANO, District Judge

    These consolidated actions arise out of allegations that Steven A. Odom, Mark Gergel, Hensley A. West, Martin D. Kidder, and Stephen J. Clearman ("Defendants"), in their capacities as officers and/or directors of World Access, Inc. ("WAXS"), a publicly held telecommunications company headquartered in Atlanta, Georgia, were "control persons" of that corporation and caused it to commit multiple incidences of securities fraud.  Presently before this Court is Plaintiffs' Motion for Class Certification.  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The Court decides the motion without oral argument as permitted by Fed. R. Civ. P. 78.  After considering the parties' written submissions, and for the reasons discussed herein, the Court grants Plaintiffs' motion for class certification.

**I.    PROCEDURAL BACKGROUND**

    This case has a protracted history.  WAXS announced on January 5, 1999 that it did not expect to meet its earnings estimates for the fourth quarter of 1998, triggering twenty-two securities fraud class action lawsuits in the United States District Court for the Northern District of Georgia between January 7, 1999 and March 18, 1999.  (Affidavit of Timothy Mast ("Mast Aff."), ¶¶ 5-6).  The cases were consolidated into *In re World Access, Inc. Securities Litigation*, 1:99 CV 43 (ODE) (the "Georgia litigation").  The Consolidated Amended Complaint asserted

claims under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77(k) and 77(o), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), including Securities and Exchange Commission Rule 10b-5.  Plaintiffs alleged that the Defendants issued materially false and misleading statements, and made material omissions in disclosures related to WAXS's products, revenues, earnings, inventory and sales practices, and the plaintiffs relied on the false information to their detriment.  The Consolidated Amended Complaint identified three separate subclasses based on how the WAXS shares were acquired: (1) the NACT merger class, (2) the Telco merger class ("Telco"), and (3) the Open Market class.  Though the Defendants did not oppose class certification, on July 1, 2002, the Northern District of Georgia denied the motion, with prejudice, for lack of compliance with Rule 23.  (Mast Aff., Exh. F).

In December 2002, would-be members of each subclass filed an identical class action in the District of New Jersey.[1]  The Court appointed Jason Thompson ("Thompson") and Raymond Crump ("Crump") as lead plaintiffs.  Defendants then filed a motion to dismiss on three grounds: (1) statute of limitations, (2) violation of the "first-filed" rule, and (3) improper venue.  The Court dismissed the case, holding that the class action complaint was barred by the one-year statute of limitations imposed by 15 U.S.C. § 77m.[2]  *Yang v. Odom*, 265 F. Supp. 2d 469 (D.N.J.

---

[1] The instant case is actually comprised of two actions.  The first, filed by Plaintiffs Pedro Yang, Carol Jackson and Peter S. Kelsch was filed on December 17, 2002, bearing the docket number 02-cv-5968 (JAP).  The second, filed on February 14, 2003 by Plaintiffs James Barberian and Karen Kinosian, with allegations virtually identical to the Complaint filed in *Yang*, bears docket number 03-cv-725 (JAP).  The Court consolidated both cases by Order dated March 18, 2003.

[2] The Court did not reach the other suggested grounds for dismissal.

2003). On December 15, 2004, the United States Court of Appeals for the Third Circuit reversed this Court's holding as to the Telco and Open Market subclasses, finding that the statute of limitations had been tolled pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004). This motion for class certification followed.

## II.     FACTUAL BACKGROUND

WAXS[3] engaged in the development, manufacturing and marketing of wireline and wireless switching, transport and access products used for the telecommunications markets in the United States, Carribean Basin, and Latin America. (Complaint, ¶ 25). Plaintiffs claim that during the Class Period, Defendants "issued materially false and misleading statements and omitted to disclose material information concerning WAXS's products, revenues, earnings, inventory, and sales practices . . . ." (Complaint, ¶ 2). Plaintiffs further allege that throughout the Class Period, Defendants "engaged in a common course of conduct that operated as a fraud on the integrity of the market for WAXS securities." (Complaint, ¶ 3).

This conduct allegedly included issuing false and misleading press releases, financial statements, and other corporate documents related to a telephone switching product called the "CDX Switch." (Complaint, ¶ 3). Plaintiffs allege that the CDX Switch was nothing more than a "non-functional development-stage prototype." (Complaint, ¶ 3). Nonetheless, the company sold the defective switches and continued to record revenue. (Complaint, ¶ 3). Further, Defendants allegedly materially overstated WAXS's sales, revenues, assets, inventory and earnings, materially understated corporate expenses, and failed to disclose the reasons for the company's ballooning inventory. (Complaint, ¶ 4).

---

[3]WAXS was not named as a defendant in this Complaint because of ongoing Chapter 11 proceedings in the United States Bankruptcy Court for the Northern District of Illinois.

According to the complaint, the truth began to emerge on January 5, 1999, when WAXS disclosed that it did not expect to meet earnings estimates for the forth quarter of 1998. (Complaint, ¶¶ 5, 166). The full scope of Defendants' misconduct was revealed on February 11, 1999. (Complaint, ¶¶ 6, 171). As a result of the fraudulent behavior, Plaintiffs allege that the market price of WAXS securities traded at artificially inflated levels throughout the class period. (Complaint, ¶ 7). Finally, Plaintiffs allege that Defendants' fraud resulted in announced earnings substantially less than the previous quarter, and far less than analysts' expectations. (Complaint, ¶ 6).

The lead plaintiffs seek certification of the Open Market and Telco classes pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Crump would represent the Open Market class, consisting of individuals who purchased WAXS securities in the open market during the period April 29, 1997 through February 11, 1999 ("Class Period"). Crump purchased 3,000 shares of WAXS securities on January 19, 1999, for approximately $37,000. (Affidavit of Carl L. Stine ("Stine Aff."), Exh. C, 60:13-20; 71:20-72:23). He also purchased 3,000 shares on January 22 and another 3,000 on February 9. (Stine Aff., Exh. C., 81:24-82:10). Crump learned of the Georgia Litigation against WAXS as early as February 15, 1999, when he contacted Wolf Popper. (Stine Aff., Exh. C., 83:7-10).

The proposed Telco class would consist of individuals who acquired securities of WAXS in the merger of Telco Systems, Inc. into WAXS, which closed on November 30, 1998. Plaintiffs propose Thompson and Peter Kelsch ("Kelsch") as class representatives. Thompson purchased 13,800 shares of Telco between October and November of 1998, (Stine Aff., Exh. A, 68:19-71:2), and Kelsch 2,000 shares for $36,750. (Stine Aff., Exh. B, 48:19-49:7).

5

Plaintiffs also request the Court to certify Wolf Popper LLP as Class Counsel, and Lite DePalma Greenberg & Rivas, LLC, as Class Liaison Counsel.

### III. DISCUSSION

#### A. The Standard for Class Certification

To maintain a class action suit, the Plaintiffs have the burden of satisfying all the prerequisites set forth in Rule 23(a) and one of the subsections contained in Rule 23(b). *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114 (1999). A court must undertake a "rigorous analysis" to determine whether the putative class and its proposed representatives satisfy each of the prerequisites to class certification. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). Generally, a court must refrain from conducting preliminary inquiry into the merits of the action, however, the court may in some cases "analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 339 (D.N.J. 1997). Any doubts should be resolved in favor of class certification, especially in securities fraud class actions, where class action treatment is the preferred method of adjudication. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985).

#### 1. Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is satisfied when "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). To show that joinder is impracticable, a party need not prove that joinder of every class member is impossible; instead, proof of "difficulty or inconvenience of joining all members of the class" is sufficient. *Wachtel*

*v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 211 (D.N.J. 2004) (citing *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990)). "No magic number exists satisfying the numerosity requirement." *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989); *see e.g. Manning v. Princeton Consumer Disc. Co.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975) (finding that fourteen class members were enough to satisfy the numerosity requirement), *aff'd*, 533 F.2d 102 (3d Cir.), *cert. denied*, 429 U.S. 865 (1976); *Minersville Coal Co. v. Anthracite Export Ass'n*, 55 F.R.D. 426, 428 (M.D. Pa. 1971) (finding that three-hundred thirty members did not satisfy numerosity requirement).

In the present case, both the Open Market and Telco classes meet the numerosity requirement. Joinder of all members would be impracticable for the Open Market class because, according to the complaint, at the time of the alleged fraud there were in excess of 19.5 million shares of WAXS stock held by thousands of shareholders. (Complaint, ¶ 37). Similarly, the Telco class alleges that more than 7.9 million shares of common stock were held by thousands of holders on record. (Complaint, ¶ 37).

### 2. Rule 23(a)(2): Commonality

The second requirement under Rule 23(a) is met when "there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs shared at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citations omitted); *In re Honeywell Int'l Inc. Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002). Therefore, the commonality requirement "is easily met." *Baby Neal*, 43 F.3d at 56.

Such is the case here. The proposed representatives in both the Telco and Open Market

classes share questions of law and fact common to those of the prospective class, namely, whether "Defendants undertook and participated in a scheme and common course of conduct to misrepresent and conceal from the investing public material facts concerning WAXS's products, revenues, earnings, inventory, and sales practices in violation of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934." (Lead Plaintiff's Memorandum of Law in Support of Motion for Class Certification ("Pl.'s Mem."), at pp.1-2). Defendants dispute the commonality requirement as to Crump, arguing that his late entry into the Open Market class - he first purchased shares on January 19, 1999, 630 days into the class period - somehow defeats commonality. That argument is insufficient given the light burden required to satisfy commonality. Regardless of when Crump purchased his shares within the Class Period, there is clearly "at least one question of fact or law" common to Crump and the Open Market class. *Baby Neal*, 43 F.3d at 56.

### 3.   Rule 23(a)(3)-(4): Typicality and Adequacy of Representation[4]

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P.23(a)(3). The concept of typicality "is intended to assess . . . whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57 (citations omitted). "The representative parties' claims are generally found to be typical if they arise from the same course of conduct that gives rise to the claims of other class members and if the claims are based on the same legal theory." *Cannon*

---

[4]Defendants' main challenges to class certification focus on the typicality and adequacy of representation prongs. Because Defendants blur the lines between these arguments in their brief, the Court will address them together.

*v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 544 (D.N.J. 1999). The threshold for showing typicality is a low one. *See In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004) (requiring the lead plaintiffs and class to share only a "broad course of alleged fraudulent conduct") (quoting *Zinberg*, 138 F.R.D. at 401). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58.

Typicality under 23(a)(3) and the adequacy of representation inquiry required by 23(a)(4) tend to merge, as "both look to the potential for conflicts in the class." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996). "Fundamentally, the purpose of the inquiries under Rules 23(a)(3) and (a)(4) is to ensure the class representatives do not have interests antagonistic to those of the class." *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 389 (D.N.J. 1998).

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts utilize a two-prong test to determine whether the representation is adequate: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Inc. Co.*, 508 F.2d 239, 247 (3d Cir.) (citations omitted), *cert. denied*, 421 U.S. 1011 (1975). Doubts concerning the adequacy of a class representative are resolved in favor of certification. *Weikel*, 183 F.R.D at 394.

Defendants make two general arguments that this case is not appropriate for class treatment. Defendants first contend that Crump is atypical and has interests antagonistic to the class because of his late entry into the Class Period. Crump did not purchase WAXS securities

9

until after the alleged fraud began to unravel. Defendants point out that dozens of class action suits were filed beginning on January 7, 1999, and Crump did not purchase his first shares until January 19. Defendants also allege that Crump's purchasing behavior - he continued to purchase shares well after the fraud became public - makes him an unsuitable class representative. The Northern District of Georgia, in denying class certification, found that the proposed class representative in that case - also a late purchaser - would be susceptible to a defense based on lack of reliance, thus jeopardizing those class members dependent on a fraud-on-the-market theory.

The Court, however, is not bound by the Northern District of Georgia's holding and, in fact, case law suggests that class representatives are not atypical by virtue of acquiring shares late into the class period and after public disclosures of potential fraudulent behavior. *Weikel*, 183 F.R.D. at 394-96; *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431, 1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. April 30, 1999). In *Weikel*, for example, the proposed class representatives purchased their shares after the company released a corrective statement, and the Defendants argued the proposed representatives were inadequate because their interests were antagonistic to the class members who purchased their shares prior to the corrective disclosure. *Weikel*, 183 F.R.D. at 393. Similarly, in *Arakis*, the Defendants challenged a proposed class representative who purchased options after curative disclosures were made to the public, and noted that the representative purchased the options in the last two days of the class period. *Id.* at *21-22.

In both cases, the courts certified the classes. The *Weikel* court found that conflicts between the class representatives and other class members "remain theoretical and are likely to

exist in any large securities fraud case." *Weikel*, 183 F.R.D. at 394.  Taking into account the Third Circuit's preference towards securities law class actions, the court ruled that any doubts should be resolved in favor of class certification, and any concerns could be addressed post-certification by the creation of subclasses.  *Id.* at 394-95.  The court was satisfied that the class representative's interests in proving a continuous scheme to defraud were properly aligned with the other class members to satisfy the adequacy requirement.  *Id.* at 395-96.  Similarly, the *Arakis* court reasoned that "[s]light factual discrepancies between the claims of various plaintiffs are insufficient to bar class certification on the ground of atypicality." *Arakis*, 1999 U.S. Dist. LEXIS 22246, at *22.  The court concluded that because the representative's cause of action arose from the same set of facts, the underlying claims were not so distinct from those of the other class members to make the claims atypical.  *Id.* at 22-23.

      As for Defendants' argument that Crump's purchasing behavior puts him at odds with other class members, case law suggests the opposite.  Crump is not precluded from representing the class by virtue of his continuing to purchase WAXS stock after the close of the Class Period.  Crump's investment strategy, called "averaging down," does not defeat a proposed class representative's typicality.  *See In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 607 n.12 (D. Minn. 2001); *see also Weikel*, 183 F.R.D. at 392-93 (stating "[b]ecause a particular investor is sophisticated or engages in speculation does not mean . . . the investor is an inappropriate class representative.").

      Defendants' second main argument against class certification is that Crump, Thompson and Kelsch fail the adequacy test because they will not "competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977).  Defendants

11

suggest that the proposed class representatives are merely lending their names to the suit, and they lack the requisite knowledge to effectively monitor class counsel and protect the interests of the class. While courts do consider, as part of the adequacy analysis, whether the named representative will "vigorously advocate the class claims," only a minimal degree of knowledge is necessary. *Szczubelek v. Cendant Mort. Corp.*, 215 F.R.D 107, 119 (D.N.J. 2002). Furthermore, "a proposed representative's lack of particularized knowledge concerning the dispute at issue 'does not render [the representative] inadequate given the fact that she has retained adequate counsel to represent her.'" *Id.* at 120 (quoting *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 182 (E.D. Pa. 1988)). While the parties each cite to different portions of the proposed class representatives' deposition testimony to emphasize that they have the requisite knowledge, or lack thereof, to vigorously prosecute this suit and monitor class counsel, Defendants are unable to establish that they have a "complete lack of personal knowledge as to the litigation [they are] supposedly maintaining on behalf of the class[es]." *Ettinger*, 122 F.R.D. at 181-82.

For example, Thompson's deposition testimony revealed that he is aware of the basis for the complaint, he knows he is representing the interests of a class of people who were defrauded, he expects that the attorneys will be consulting him on decisions, and he hired the attorneys on a contingency basis. (Stine Aff., Exh. A, 111:23-113:4). Thompson, like Crump and Kelsch, establish at least a baseline of knowledge regarding the case sufficient to render them adequate class representatives.

Accordingly, the Court is satisfied that the proposed representatives of the Open Market and Telco classes satisfy the typicality standard because their respective claims arise from the

12

same course of conduct and are based on the same legal theory. Crump's claims are typical of those of the Open Market class because he acquired WAXS shares on the open market during the Class Period, and he seeks to recover losses allegedly resulting from materially false and misleading statements disseminated to the investing public. Thompson and Kelsch's claims are typical of those of the Telco class because all of the members were damaged by the alleged false and misleading statements contained in the Telco Merger Registration Statement, and the members are proceeding on the same legal theory. For the same reasons, Kelsch, Thompson and Crump are adequate class representatives because their interests are not antagonistic to the classes, and they are capable of vigorously prosecuting the suit. To the extent that class conflicts may later develop, absent class members may be protected by the creation of sub-classes.

The second element of adequacy is that the Plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. There is no dispute that Plaintiffs' counsel fits the description. Accordingly, the Court finds that Crump, Thompson and Kelsch satisfy all of the Rule 23(a) requirements.[5]

### 4. Rule 23(b) Requirements

After satisfying the criteria set out in Rule 23(a), a party seeking class certification must also meet the requirements of either Rule 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*,

---

[5]The Defendants also fashion an argument that class certification is inappropriate because, according to deposition testimony, neither Crump nor Kelsch knew they were defrauded. As Plaintiffs note, Defendants cite no case law in support of this proposition. In addition, no case law requires that the class representative have specific knowledge of when they were defrauded. And while Kelsch did not plead fraud, making Defendants' argument irrelevant, in Crump's case it is clear that Crump was not initially aware of the fraud because he purchased WAXS securities solely on the recommendation of his broker. Reliance on one's broker does not make a Plaintiff atypical in a fraud-on-the-market case, and it does not render a securities fraud case inappropriate for class treatment. *See In re Regal Communications Corp. Sec. Litig.*, No. 94-179, 1995 U.S. Dist. LEXIS 13492, *14 (E.D. Pa. Sept. 12, 1995).

521 U.S. 591, 614 (1997).  The proposed class representatives seek class certification under Rule 23(b)(3), which provides that a class action may be maintained if a court finds: (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

      The predominance inquiry "focuses on the number and significance of common questions as opposed to individual issues." *Jerry Enters. of Gloucester County, Inc. v. Allied Beverage Group, LLC*, 178 F.R.D. 437, 446 (D.N.J. 1998).  The purpose of the predominance inquiry is to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  Predominance is satisfied when issues specific to individual class members "have lesser overall significance than the issues common to the class . . . ." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002).

      In this case, the proposed class representatives have identified a number of common factual and legal issues that predominate over any individual issues that may arise.  Although Defendants appear to raise an issue as to reliance for the Open Market Class, questions regarding individual reliance do not generally preclude class certification. *Eisenberg*, 766 F.2d at 786.  A finding of predominance in this case is well-supported and entirely consistent with the oft-stated principle that when "[c]onfronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable which is not defeated by slight differences in class member positions, and the issue may profitably be tried in one suit." *In re Pharmaprint, Inc. Sec. Litig.*, No. 00-cv-

00061, 2002 U.S. Dist. LEXIS 19845, *37-38 (D.N.J. April 17, 2002) (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)).  Such is the case here.

Rule 23(b)(3) also requires Plaintiffs to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In view of the Third Circuit's preference for class actions in the adjudication of securities fraud claims, "it would be a rare case that satisfied all the requirements of Rule 23(a), and the predominance requirement of Rule 23(b)(3), and in which nevertheless class action was not deemed" to satisfy the superiority requirement.  *In re Honeywell*, 211 F.R.D. at 267.  Indeed, there are a large number of geographically dispersed plaintiffs, many of whom have sustained relatively small losses, and adjudication by individual class members would cause an overwhelming burden on the parties and courts.  *See id.*  Further, difficulties in managing this particular litigation as a class action are unlikely.  For purposes of class certification, class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

**IV.    CONCLUSION**

For the reasons set forth above, the Court grants Plaintiffs' motion for class certification under Rule 23.  An appropriate order follows.

Date: August 16, 2005

                                           s/ Joel A. Pisano
                                           JOEL A. PISANO, U.S.D.J.