**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————    :
                                            :
PEDRO YANG, CAROL JACKSON, and    :
PETER S. KELSCH, on behalf of           :
themselves and all persons similarly       :
situated,                                         :    Civil Action No. 02-5968 (JAP)
            Plaintiffs,              :    (consolidated with No. 03-725 (JAP))
        -v-                                :
                                            :
STEVEN A. ODOM, MARK GERGEL,    :
HENSLEY E. WEST, MARTIN D.          :
KIDDER and STEPHEN J. CLEARMAN,    :    **OPINION**
                                            :
            Defendants.             :
—————————————————————    :

APPEARANCES:

Allyn Z. Lite, Esq.
Joseph J. DePalma, Esq.
Susan Pontoriero, Esq.
LITE DEPALMA GREENBERG
  & RIVAS, LLC
Two Gateway Center, 12th Floor
Newark, New Jersey 07102

        *Plaintiffs' Liaison Counsel*

Robert M. Kornreich, Esq.
Carl L. Stine, Esq.
James Kelly-Kowlowitz, Esq.
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022

        *Plaintiffs' Lead Counsel*

William B. McGuire, Esq.
TOMPKINS, MCGUIRE,

WACHENFELD & BARRY, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

*Defendants' Local Counsel*

J. David Dantzler, Jr., Esq.
J. Timothy Mast, Esq.
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308

*Defendants' Lead Counsel*

PISANO, District Judge.

Plaintiffs Pedro Yang, Carol Jackson, and Peter S. Kelsch (collectively, the "Plaintiffs")

bring this action on behalf of themselves and other persons similarly situated against Defendants

Steven A. Odom, Mark Gergel, Hensley A. West, Martin D. Kidder and Stephen J. Clearman

(collectively, the "Defendants").[1]  Plaintiffs allege that Defendants violated various provisions of

the Securities Act of 1933, the Securities Exchange Act of 1934, and the rules promulgated

thereunder.  Currently before the Court is Defendants' Motion to Dismiss or alternatively Motion

to Transfer this action to the Northern District of Georgia.[2]  For the following reasons, the Court

grants Defendants' Motion to Transfer this action to the Northern District of Georgia.[3]

## I.   <u>Factual History</u>

This case has a tortured history.[4]  Defendants are former officers and directors of World

Access, Inc. ("WAXS"),[5] a publicly-held telecommunications company headquartered in Atlanta,

---

[1] The instant case is actually comprised of two actions.  The first, filed by Plaintiffs Pedro Yang, Carol Jackson, and Peter S. Kelsch was filed on December 17, 2002 bearing the docket number 02-5968 (JAP).  The second, filed on February 14, 2003 by Plaintiffs James Barberian and Karen Kinosian, with allegations virtually identical to the previous complaint, bears docket number 03-725 (JAP).  The Court consolidated these cases by Order dated March 18, 2003.

[2] Jurisdiction is not challenged and is premised on 28 U.S.C. § 1331 because Plaintiffs have asserted numerous federal securities law claims.

[3] The Court decides this motion without oral argument as permitted by Fed. R. Civ. P. 78. In addition to the parties' briefs, the Court relies on the affidavits of J. Timothy Mast, Esq. and Carl L. Stine, Esq. in discussing the factual circumstances surrounding this litigation.

[4] For a more detailed history of this case, see the Court's opinion granting Plaintiffs' motion for class certification dated August 16, 2005.

[5] WAXS has filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois.  Accordingly, WAXS

Georgia.  On January 5, 1999, WAXS announced that it did not expect to meet its earnings estimates for the fourth quarter of 1998.  This announcement triggered the filing of twenty-three securities fraud class action lawsuits in the United States District Court for the Northern District of Georgia between January 7, 1999 and March 18, 1999 against WAXS and the individual defendants named in the instant case.[6]  In these lawsuits, the plaintiffs alleged that WAXS issued false and misleading press releases, financial statements, and other corporate documents relating to a telephone switching product called the "CDX Switch."

The plaintiffs in these twenty-three putative class actions represented three classes of individuals: (1) persons who acquired WAXS securities in its merger with NACT Telecommunications, Inc. (the "NACT Class") which closed on October 29, 1998; (2) persons who acquired WAXS securities in its merger with Telco Systems, Inc. (the "Telco Class") which closed on November 30, 1998; and (3) persons who purchased securities of WAXS on the open market during the proposed class period (the "Open Market Class").

The cases were consolidated before Chief Judge Orinda D. Evans in the Northern District of Georgia and lead plaintiffs were appointed for each class.  The lead plaintiffs moved for class certification.   Judge Evans denied the motion for class certification on July 26, 2001.  Subsequently, many individual plaintiffs dismissed their claims; however, two individual

_____

was not named as a defendant in the instant complaint.

[6] The Defendants held the following positions within WAXS:  Steven A. Odom was the Chairman and Chief Executive Officer; Mark Gergel was the Chief Financial Officer and an Executive Vice President; Hensley E. West was the President, Chief Operating Officer, and a director; Martin D. Kidder was the Principal Accounting Officer, Controller, Secretary of the Board of Directors, and a Vice President; and Stephen J. Clearman was a director and member of the company's audit committee.

plaintiffs continued to pursue their claims in Georgia.  After fact and expert discovery, in March 2004, Judge Evans granted summary judgment to the defendants on the remaining plaintiffs' securities fraud claims.  See In re: World Access, Inc. Sec. Litig., 310 F. Supp. 2d 1281 (N.D. Ga. 2004).

Plaintiffs filed the instant action in New Jersey on December 17, 2002.  The Plaintiffs in the New Jersey action were would-be members of the three classes in the Georgia action which Judge Evans refused to certify.  The Defendants in the New Jersey action were defendants in the Georgia Action.  Further, it is undisputed that most, if not all, of the essential acts, transactions, and wrongful conduct at issue occurred in the Northern District of Georgia.[7]

Thus, the question is:  Why did Plaintiffs file this case in New Jersey as opposed to either filing a new class action lawsuit in Georgia or intervening as individual plaintiffs to assert their rights in the pending Georgia action?  Plaintiffs did not file a purported class action in Georgia naming themselves as class representatives because they believed that their claims would be time-barred in that district under the Eleventh Circuit's holding in Griffin v. Singletary, 17 F.3d 356 (11th Cir. 1994).  In Griffin, the Eleventh Circuit held that the existence of a pending class action, such as the original action filed in Georgia, does not toll the statute of limitations period for later class actions brought by putative class members.  Griffin, 17 F.3d at 359.

Plaintiffs did not individually intervene in the Georgia litigation, although it appears from this Court's reading of Griffin that they would have been permitted to do so under Eleventh

---

[7]  In their Consolidated Amended Class Action Complaint, the plaintiffs in Georgia alleged that "[v]enue is proper in [the Northern District of Georgia] as many of the acts, transactions and wrongful conduct alleged [therein], including the dissemination to the investing public of the materially misleading statements at issue, occurred in substantial part in [the Northern District of Georgia].

Circuit precedent,[8] because they felt that "given the size of their losses, it was not economically feasible to prosecute the action on an individual basis." Yang v. Odom, 392 F.3d 97, 101 (3d Cir. 2004). Thus, because they wanted to file a class action lawsuit, Plaintiffs filed their lawsuit in the District of New Jersey because their claims were not clearly time-barred under Third Circuit precedent.

During the course of this litigation, the Third Circuit was required to consider whether the existence of a pending class action tolls the statute of limitations period for later class actions brought by putative class members. Yang v. Odom, 392 F.3d 97 (3d Cir. 2004). The Third Circuit rejected the Eleventh Circuit's approach in Griffin, stating that where a court's refusal to certify a class was based on Rule 23 deficiencies in the putative class representative, as opposed to deficiencies in the class itself, the statue of limitations should be tolled with respect to additional class actions by putative members of the original asserted class. Id. at 111. Applying this rule, the Third Circuit found the claims of the Telco and Open Market Classes to be timely and allowed them to proceed; however, the court dismissed the claims of the NACT class. Id. at 109-111.

On August 16, 2005, the Court granted Plaintiffs' motion for class certification and certified two classes for the purposes of this litigation, the Telco and Open Market Classes. The Court appointed Jason Thompson and Peter S. Kelsch class representatives for the Telco Class

---

[8] The Eleventh Circuit in Griffin held that while the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class, see Griffin, 17 F.3d at 359, the pendency of a previously filed class action *does* toll the limitations period for *individual claims* brought by putative class members, see id. at 360-61. The reason for this distinction is that the tolling of the limitations period in the latter instance will "discourage putative members from needlessly multiplying actions" when a class action which would protect those members rights is pending. Id. at 360-61.

and Raymond T. Crump as class representative of the Open Market Class.  Defendants then filed the instant motion to dismiss or transfer venue.

   For the following reasons, the Court transfers this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).  However, before discussing the relevant legal standard and principles, the Court must explain that it transfers this case reluctantly and only after thoroughly considering dismissing this case.[9]  Despite the Third Circuit's belief that its decision in Yang v. Odom, 392 F.3d 97, 112 (3d Cir. 2004) will not "invite forum shopping," this case represents the most blatant example of forum shopping seen by this Court.  Plaintiffs could have timely asserted their claims in the Northern District of Georgia.  Instead, faced with unfavorable rulings in that district, including Judge Evans's denial of class certification, Plaintiffs chose to wait until the statute of limitations on their claims had long expired in Georgia and bring their claims in New Jersey, a district which has very little connection to this dispute.

---

   [9]  The Court was prepared to dismiss this case for improper venue.  However, the case did have some contact with New Jersey because, according to Plaintiffs:  (1) the allegedly false and misleading WAXS materials were transmitted into this district; (2) one defendant, Stephen J. Clearman, sold WAXS stock during the class period in New Jersey; (3) one named plaintiff, Pedro Yang, purchased WAXS stock in the District of New Jersey during the class period; and (4) many other class members "likely" purchased their WAXS stock in New Jersey during the class period.
   Given these circumstances, the Court cannot overlook case law which provides Plaintiffs with a viable argument under the special venue provisions of the securities laws, 15 U.S.C. §§ 78aa, 77(v)a.  See, e.g., CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 648-49 (D.N.J. 2004) (finding that venue is proper in a district because at least one act or transaction constituting the securities violation occurred there, namely, the dissemination of an allegedly misleading document in that district); Carty v. Health-Chem Corp., 567 F. Supp. 1, 2 (E.D. Pa. 1982) (same); see also Gambone v. Lite-Rock Drywall Corp., 124 Fed. Appx. 78, 80 (3d Cir. 2005) (stating that venue under section 77v(a) lies in a district where alleged fraudulent sale of stock took place).  But see Am. High-Income Trust  v. Alliedsignal Inc., No. CIV.A. 00-690, 2005 WL 373473, at *2 (D. Del. Mar. 7, 2002) (rejecting plaintiffs' argument that venue was proper in District of Delaware under 15 U.S.C. § 78aa because the company disseminated allegedly misleading SEC filings and press releases in Delaware).

Accordingly, the Court must transfer this action pursuant to section 1404(a) to the district where it belongs — the Northern District of Georgia — a district that has already expended substantial judicial resources and carefully considered the same issues before this Court in order to achieve the most consistent, convenient, and expeditious resolution of this dispute.

## II.    <u>Legal Standard</u>

This Court has the authority to transfer this action, in its discretion, to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).[10]  Section 1404(a) provides that a district court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice" to a district in which the action might have been brought.  28 U.S.C. § 1404(a).  The plaintiff's choice of forum should not be lightly disturbed.  <u>See</u> <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995).  Accordingly, the moving party has the burden to establish that the proposed transferee forum is a proper forum and that a balancing of the proper interests weighs in favor of transferring the case there.  <u>See</u> <u>id.</u> at 879; <u>see also</u> <u>Job Haines Home for the Aged v. Young</u>, 936 F. Supp. 223, 227 (D.N.J. 1996) (" 'The moving party [pursuant to § 1404(a)] must thus prove that "its alternative forum is not only adequate, but more convenient than the present

---

[10] Although the parties discussed the transfer of this action pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406, the Court applies § 1404(a) because it has declined to find that New Jersey is an improper venue for this dispute.  <u>See, e.g.</u>, <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 878 (3d Cir. 1995) (stating that § 1404(a) provides for transfer from one proper forum to another while § 1406 provides for transfer of a case filed in a forum that is not the proper venue).

Furthermore, the Court notes that despite Plaintiffs' argument that transfers are not to be liberally granted in securities cases, the special venue provisions for securities fraud cases do not prohibit the transferring of a class action pursuant to § 1404(a) to another jurisdiction " 'which is clearly a more convenient jurisdiction for litigating the dispute.' "  <u>Job Haines Home for the Aged v. Young</u>, 936 F. Supp. 223, 229-30 (D.N.J. 1996) (quoting <u>Harris v. Am. Inv. Co.</u>, 333 F. Supp. 325, 327 (E.D. Pa. 1971)).

forum.' " (quoting <u>Hudson United Bank v. Chase Manhattan Bank</u>, 832 F. Supp, 881, 888

(D.N.J. 1993)).

**III.    Legal Discussion**

**A.    The Northern District of Georgia is a "District in which this Action Might Have
         Been Brought" Under Section 1404(a)**

     First, this Court must determine if the Northern District of Georgia is a "district in which

this action might have been brought" pursuant to section 1404(a).  A district is one in which an

action "might have been brought" if that district  has (1) subject matter jurisdiction over the

claims; (2) personal jurisdiction over the parties; and (3) is a proper venue.  <u>See</u> <u>Shutte v. Armco</u>

<u>Steel Corp.</u>, 431 F.2d 22, 24 (3d Cir. 1970); <u>High River Ltd. P'ship v. Mylan Laboratories, Inc.</u>,

353 F. Supp. 2d 487, 493 (M.D. Pa. 2005); <u>CIBC World Markets,</u> 309 F. Supp. 2d at 643-44.

The Third Circuit made clear in <u>Shutte v. Armco Steel Corp.</u> that the relevant considerations in a

section 1404(a) analysis are jurisdiction and venue:

> [A] transfer is authorized by [§ 1404(a)] only if the plaintiff had an
> 'unqualified right' to bring the action in the transferee forum at the time
> of the commencement of the action; i.e., venue must have been proper in
> the transferee district and the transferee court must have had power to
> command jurisdiction overall of the defendants."

<u>Shutte</u>, 431 F.2d at 24.

     The Court finds that the Northern District of Georgia is a district where this action might

have been brought.  There is no dispute that the Northern District of Georgia has the requisite

jurisdiction over this case and is a proper venue to adjudicate this case, nor should there be as the

same claims in this lawsuit were litigated against the same parties for years in the Northern

District of Georgia.

9

_____Plaintiffs argue that the Northern District of Georgia is not a district where this action might have been brought because at the time the instant suit was filed on December 17, 2002, the statute of limitation had expired on Plaintiffs' claims in the Northern District of Georgia.  As support for their position, Plaintiffs primarily rely on <u>Jozwiak v. Dayton Oil Co.</u>, 200 F. Supp. 300, 302 (S.D.N.Y. 1961), a case which is over forty years old, is not binding upon this District, and does not provide Plaintiffs with clear authority for denying transfer in this case.  In <u>Jozwiak</u>, the court declined to transfer a case to the Southern District of Ohio because that district "may not be a district under § 1404(a) where plaintiffs' action might have been brought" due to the potential expiration of the statute of limitations in Ohio.  <u>See Jozwiak</u>, 200 F. Supp. at 301.  In making this decision, the <u>Jozwiak</u> court expressly refused to determine whether it had the *power* to transfer the case to the Southern District of Ohio considering the potential expiration of the limitations period in that district.  <u>See id</u>.  This Court finds that it does have such a power, and accordingly, rejects Plaintiffs' argument.[11]

The fact that the statute of limitations may have run on Plaintiffs' claims in the Northern District of Georgia is immaterial to this analysis. <u>See Packer v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.</u>, 728 F. Supp. 8, 12 (D.D.C. 1989) (transferring case to Eastern District

_____

[11]  Plaintiffs' reliance on <u>Am. Cyanamid v. Eli Lilly and Co.</u>, 903 F. Supp. 781 (D.N.J. 1995) (Pisano, J.), is similarly misplaced.  It is correct that the court in that case stated, "[a] court may transfer an action 'only if the plaintiff had an unqualified right to bring the action in the transferee forum at the time of the commencement of the action.' " <u>Am. Cyanamid</u>, 903 F. Supp. at 784 (quoting <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 24 (3d Cir. 1970).  However, in analyzing whether the plaintiff could have brought the action in the proposed transferee forum, the Southern District of Indiana, the Court discussed whether that forum met the requisite jurisdictional and venue requirements.  This Court did not discuss nor find that a plaintiff would not have an "unqualified right" to bring an action in a forum if the plaintiff's claims were potentially time-barred in that forum.

of Virginia which, under 28 U.S.C. § 1404(a), was a district in which the action "might have

been brought" despite fact that the statute of limitations may have run in Virginia); see also Saudi

v. Northrop Grumman Corp., 273 F. Supp. 2d 101, 105 (D.D.C. 2003) (transferring case to

Eastern District of Virginia under § 1406(a) despite fact that lawsuit may be time-barred by

Virginia's statute of limitations); Schrieber v. Allis-Chalmers Corp., 448 F. Supp. 1079, 1084 (D.

Kan. 1978) ("We must conclude that the "might have been brought" language of § 1404(a), in the

present context, refers chiefly to questions of venue and jurisdiction in the transferee court; it

concerns a plaintiff's right to institute the action originally, and not possible defense[s] which

may be interposed by a defendant, such as statute of limitations."), rev'd on other grounds, 611

F.2d 790 (10th Cir. 1979)

      The Packer court pointed out the danger of factoring the possible expiration of a statute of

limitations in the proposed transferee court into the § 1404(a) transfer analysis:

> [t]o bar transfer of a case to a district where venue and jurisdiction are
> proper, simply because the action is time-barred in that district, would
> merely encourage forum shopping.  A plaintiff could then wait until the
> statute of limitations has run in the jurisdiction where the case should
> have been brought, and then file the action in the district the plaintiff
> prefers, despite that jurisdiction's limited nexus to the case.

Packer, 728 F. Supp. at 12.

      Plaintiffs certainly could have brought their action prior to the expiration of the statute of

limitations in the Northern District of Georgia.  They chose not to do so.  They should not be able

to manipulate our courts by relying on their own decision *not* to file a timely suit in the Northern

District of Georgia to fight transfer of this action to that district.  To find for Plaintiffs on this

issue would encourage the type of forum shopping that § 1404(a) was designed to prevent.

11

Furthermore, Plaintiffs could have commenced their action in the Northern District of Georgia after the date that they believed that the statute of limitations expired because that district was the proper venue and had jurisdiction over the case.  The fact that the Defendants may have raised a statute of limitations defense and the possibility that the Court may have accepted that defense and dismissed the case is nothing more than an unfortunate reality of litigation and the strategic choices that litigants make.  Accordingly, the Court finds that this action "might have been brought" in the Northern District of Georgia.

**B.    The Northern District of Georgia is the More Convenient Forum and it is in the Interests of Justice to Transfer this Action to that District**

Next, the Court must determine if Defendants have established that the Northern District of Georgia is the more appropriate and convenient forum to hear this matter.   The Third Circuit has set forth a variety of private and public interests for the Court to consider in determining whether to transfer this case under section 1404(a).

The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of witnesses to the extent that they may be unavailable for trial in one of the fora; and (6) the location of sources of proof such as books and records to the extent that the records could not be produced in the alternative forum.  See, e.g., Jumara, 55 F.3d at 879; CIBC World Markets, Inc., 309 F. Supp. 2d at 650.

The public interests to consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local

interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  See, e.g., Jumara, 55 F.3d at 879.

    **1.    Private Interests Weigh in Favor of Transfer    **

    The relevant private interests weigh in favor of transferring this case to the Northern District of Georgia.  First, although Plaintiff's forum preference in this matter is the District of New Jersey, the Court affords less deference to Plaintiff's choice of forum in this district because: (1) the operative facts of this lawsuit, namely, the alleged dissemination of materially misleading information, did not occur in New Jersey, see, e.g., Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 228 (D.N.J. 1996) (affording less deference to plaintiff's choice of forum in the District of New Jersey where alleged wrongful activities, namely, the dissemination of allegedly false and misleading statements occurred); (2) this is a class action litigation, see id. ("[T]he plaintiff's choice of a forum becomes substantially less important . . . when he sues representatively on behalf of a class."); and (3) none of the lead plaintiffs are residents of New Jersey, see Fellner v. Phila. Toboggan Coasters, Inc., No. Civ.A. 05-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005) ("[W]hen plaintiff brings suit in a district other than his home state, his venue choice is entitled to less deference.").[12]

    Furthermore, we are mindful that Plaintiffs only pursued their case here after their options in Georgia effectively ran out.  The Plaintiffs and appointed class representatives in this case were willing to be active participants in the Georgia litigation prior to that court's denial of class

---

    [12] Peter S. Kelsch is a resident of California, Raymond T. Crump is a resident of Indiana, and Jason Thompson is a resident of South Carolina.

certification as they filed Plaintiff Certifications in Georgia indicating such.[13]

The Defendants' forum preference obviously weighs in favor of litigating this matter in the Northern District of Georgia, as does the fact that the claim undisputably arose in the Northern District of Georgia.  See LG Electronics Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 590 (D.N.J. 2001) (transferring case to the Northern District of California where, among other things, center of gravity of alleged wrongful activity was California and defendants' more convenient forum was in California).

With respect to the convenience of the parties in this case, this Court finds that the Northern District of Georgia is the more convenient forum.  Although one defendant, Stephen Clearman, is a New Jersey resident, the other four Defendants are residents of the Northern District of Georgia.   The District of New Jersey is no more geographically convenient for the Plaintiffs than the Northern District of Georgia considering that the lead plaintiffs are residents of South Carolina, Indiana, and California and the potential class members are apparently located throughout the country.  See Job Haines, 936 F. Supp. at 231 & n.9 (finding that convenience of parties in the transfer analysis weighed in favor of defendants where all defendants either resided or did business in the transferee district and plaintiffs in class action were located all over the United States).

Defendants have shown that the Northern District of Georgia would be a more convenient forum for the majority of potential witnesses in this matter.  An examination of the potential

---

[13] These individuals signed Plaintiff Certifications in Georgia on the following dates: Pedro Yang signed on March 4, 1999; Carol Jackson signed on January 27, 1999; Peter S. Kelsch signed on January 19, 1999; Jason Thompson signed on February 9, 1999; and Raymond T. Crump signed on February 17, 1999.

witnesses in the Georgia litigation is illustrative in this regard considering that it involved the

same substantive issues.  First, out of the three non-party witnesses deposed by the individual

plaintiffs in the Georgia action, two live in and were deposed in Georgia.  Furthermore, a review

of a list of potential witnesses supplied by Defendants in support of their motion reveals that the

majority of the remaining potential witnesses, approximately thirty-four out of sixty-one, live in

Georgia.[14]  Only one potential witness, a former WAXS engineer, lives in New Jersey.

Furthermore, none of the other witnesses live within a one-hundred mile radius of New Jersey.[15]

Accordingly, a significant number of the potential witnesses in this case will not only be

geographically convenienced by the transfer of this case to the Northern District of Georgia, but

they will also be subject to the subpoena power of that district, which is not the case in the

District of New Jersey. See Fed. R. Civ. P. 45(b)(2); Leading Edge Logistics, Inc. v. Central

Trucking, Inc., No. Civ. A. 05-1299, 2005 WL 1417131, at *2 (E.D. Pa. June 16, 2005)

(transferring the case under section 1404(a) and considering fact that more potential witnesses

would be subject to subpoena power of transferee forum than transferor forum); Job Haines, 936

F. Supp. at 231-32 (finding that convenience of witnesses weighed in favor of transfer where

many key witnesses were subject to the subpoena power of the transferee district and not in the

---

[14] The Court notes that Plaintiffs' counsel had originally provided Defendants with a list of eighty-one individuals that they thought had relevant information about this dispute.  Of these eighty-one individuals, Defendants were able to find a last known address for sixty-one.  Even if thirty-four out of eighty-one potential witnesses reside in Georgia, this is still a significant statistic weighing in favor of transfer to that forum.

[15] These potential witnesses reside in: Georgia, Florida, Arizona, Indiana, Massachusetts, New Hampshire, Texas, California, Illinois, Missouri, Nevada, and El Salvador.

transferor district).[16]

Finally, the location of many documents and other sources of proof in this case in the Atlanta area weighs slightly in favor of transferring this case to the Northern District of Georgia. The document production in the Georgia litigation occurred in Atlanta consisting of documents from WAXS's Atlanta offices and its storage facility in Tucker, Georgia. The originals of the potentially relevant WAXS documents are located in the Atlanta area. Plaintiffs' counsel has copies of some of these documents at their Philadelphia offices, which would cut against transfer, see Jumara, 55 F.3d at 879 (finding that the location of documents is not particularly relevant where the records could be produced in the alternative fora); however, according to Defendants, Plaintiffs do not have copies of all of the potentially relevant documents. Thus, since there appears to be some relevant documents solely located in Atlanta, this factor weighs slightly in favor of transferring this case to the Northern District of Georgia.

---

[16] In finding that this factor weighs in favor of transferring this matter to the Northern District of Georgia, the Court is mindful of Plaintiffs' argument that some of the relevant depositions in this case have been taken already and that additional witnesses can be deposed at places convenient to them. However, unlike Defendants, who provide a lengthy list of potential witnesses and their respective residences, Plaintiffs provide no such data for comparison. Further, Plaintiffs' argument that "many of the witnesses at trial will appear by deposition" is speculative and even if true, still means that since the majority of witnesses live in Georgia, their trial testimony, whether that be live or by deposition, will be in Georgia. Also, to the extent that the parties wish to present live testimony, which they are entitled to do, such a result is better achieved in the Northern District of Georgia where a majority of the potential witnesses are subject to subpoena. See Fed. R. Civ. P. 45(b)(2); see also Claasen v. Brown, No. Civ.A. 94-1018, 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996) ("Live testimony is always markedly preferable to written depositions, particularly where the resolution of critical factual issues will turn on the credibility of witnesses.").

### 2.    Public Interests Weigh in Favor of Transfer

The relevant public interests also weigh in favor of transferring this case to the Northern District of Georgia.[17]  First, the trial or other disposition of this matter would be more efficient and expeditious, if conducted in the Northern District of Georgia.  Judge Evans is already intimately familiar with the facts and legal questions underlying this lawsuit.  For over three years, Judge Evans sifted through the extensive evidence, expert testimony, and massive discovery in this case.   It would be a gross waste of judicial resources for this Court to litigate the merits of Plaintiffs' claims from scratch considering the fact that Judge Evans ruled on various dispositive motions and other legal issues in a matter substantially identical to the one before this Court.  See, e.g., Job Haines, 936 F. Supp. at 233-34 (finding that where judge in proposed transferee district was "intimately familiar" with the case at hand, it would be a "gross waste of judicial resources" not to transfer the case).  Certainly, considering her familiarity with this case, Judge Evans will be able to provide the parties with a more expeditious resolution of this long pending matter than the parties would achieve in this Court.

Furthermore, the important interests of consistency of judgments weighs in favor of transferring this case to the Northern District of Georgia.  Plaintiffs admit that their claims in this Court are "substantially identical" to the claims Judge Evans considered in Georgia.  The existence of such duplicative litigation concerns the Court as it presents a substantial risk for inconsistent judgments.  See Dollinger v. Salomon Smith Barney, Inc., No. 00-5607, 2001 WL

---

[17]   The Court does not discuss the public policies of the fora or the familiarity of the trial judge with the applicable state law in diversity cases as these interests appear irrelevant to the instant matter.

1917976, at *2 (D.N.J. Mar. 7, 2001) (transferring case to the District of Delaware where a substantially identical litigation was pending to avoid "duplicative litigation of the same issues and inconsistent results").

With respect to monetary considerations, it appears to this Court that it would be less expensive for all involved to adjudicate this case in a forum that is geographically the most convenient to the majority of participants in this case.  As indicated above, the Northern District of Georgia is the more convenient forum for a significant number of parties and potential witnesses in this matter.

Finally, since WAX is located in the Northern District of Georgia, the conduct at issue allegedly occurred in that district, and Judge Evans has already invested substantial time and energy into this matter, the Northern District of Georgia has a particular local interest in deciding this dispute.  See LG Electronics Inc.,138 F. Supp. 2d at 592 (finding that the local interest in deciding disputes weighed in favor of transfer to the Northern District of California where the "center of gravity" of the lawsuit was California and where that district had familiarity with the matter).

**IV.    Conclusion**

        In conclusion, for the reasons stated herein, and with great respect to the Northern District of Georgia's previous disposition of the various issues presented in this litigation, and being critical of Plaintiffs' attempt to frustrate Judge Evans's previous efforts, this Court orders this case transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).  An appropriate order accompanies this opinion.

DATED: 17th of January, 2006                         s/ Joel A. Pisano
                                                           JOEL A. PISANO, U.S.D.J.